## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

Amanda Turner,

                Plaintiff,

                              Case No. 4:20-cv-201-MLB

v.

Floyd Medical Center, et al.,

                Defendants.

_____/

## **OPINION & ORDER**

Plaintiff Amanda Turner sued her probation officer, Defendant Kim Brandon, for false imprisonment, malicious prosecution, abuse of process, violation of the Georgia Constitution, intentional and negligent infliction of emotional distress, defamation, and punitive damages. (Dkt. 1-3.)[1] Defendant moves for summary judgment. (Dkt. 68.) The Court grants that motion.

---

[1] Plaintiff sued other defendants, too. But this Order deals solely with Defendant Kim Brandon, who was originally erroneously named in the complaint as Kim Baker. (*See* docket entry dated 9/15/2020.)

## I.   Background[2]

At all times relevant here, Plaintiff was on probation.  (Dkts. 68-4 ¶ 1; 74-1 ¶ 1.)[3]  Defendant supervised Plaintiff's probation.  (Dkts. 68-4 ¶ 2; 74-1 ¶ 2.)  One of her probation conditions was to "not violate the criminal laws of any governmental unit and be of general good behavior." (Dkts. 68-4 ¶ 3; 74-1 ¶ 3.)

On May 7, 2019, Plaintiff drove her vehicle off the road and struck a tree.  (Dkts. 68-4 ¶ 4; 74-1 ¶ 4.)  She was taken to the emergency room

---

[2] The Court derives the facts from the admitted portions of Defendant's statement of material facts (Dkt. 68-4) and from the Court's own review of the record and determination of what facts are material.  Consistent with Local Rule 56.1, the Court considers each of Defendant's facts admitted unless Plaintiff directly refuted the fact with a response supported by cited evidence, challenged whether the evidence could be introduced in an admissible form, or showed that Defendant's citation does not support its fact as stated.  *See* LR 56.1(B)(2)(a)(2), NDGa.  The Court did not consider any portion of Plaintiff's statement of additional facts (Dkt. 74-2) because it is a statement of issues, rather than a statement of facts, nor did it consider any facts set out only in the briefs, LR 56.1(B)(1).

[3] Plaintiff's response to Defendant's statement of material facts violates this Court's Standing Order.  The Standing Order provides: "[A] party responding to a statement of material facts shall copy into its response document the numbered statement to which it is responding and provide its response to that statement immediately following."  (Dkt. 64 ¶ r(2).) Plaintiff did not copy into its response document the numbered statement to which it was responding.  (*See* Dkt. 74-1.)  The Court admonishes Plaintiff for violating the Standing Order.  The rule is pretty clear and should be followed.

at Floyd Medical Center.  (Dkts. 68-4 ¶ 5; 74-1 ¶ 5.)  Georgia State Patrol Trooper Keith Flowers investigated the crash and went to the hospital to interview Plaintiff.  (Dkts. 68-4 ¶ 6; 74-1 ¶ 6.)  After talking to Plaintiff, Trooper Flowers suspected that Plaintiff had been driving under the influence at the time of her crash.  (Dkts. 68-4 ¶ 7; 74-1 ¶ 7.)  He asked a nurse to draw Plaintiff's blood and then submitted that blood sample for analysis by the state crime lab.  (Dkts. 68-4 ¶ 8; 74-1 ¶ 8.)  He told Plaintiff to turn herself in to the Polk County jail for driving under the influence and failure to maintain lane.  (Dkts. 68-4 ¶¶ 9, 21; 74-1 ¶¶ 9, 21.)  Plaintiff left Floyd Medical Center and went to another hospital, Paulding WellStar Hospital,[4] to have her own drug and alcohol screening conducted.  (Dkts. 68-4 ¶ 10; 74-1 ¶ 10.)  WellStar conducted a rapid drug and alcohol screen at 12:30 a.m. on May 8th.  (Dkts. 68-4 ¶ 11; 74-1 ¶ 11.)  Later, Plaintiff called Defendant and informed her about the crash, her interaction with Trooper Flowers, and the two traffic charges.  (Dkts. 68-4 ¶¶ 12–13; 74-1 ¶¶ 12–13.)  On May 10th, Plaintiff met Defendant at the

---

[4] The complaint says the second hospital she went to was Piedmont Hospital (Dkt. 1-3 at 10), but Plaintiff testified that she went to "Paulding" (Dkt. 66 at 66:11–13), and Defendant testified that it was "Paulding WellStar Hospital" (Dkt. 67 at 10:2–3).

Polk County courthouse and provided the rapid screen results from WellStar, which showed no drugs or alcohol.  (Dkts. 68-4 ¶ 14; 74-1 ¶ 14.)

On May 15th, Defendant received the incident report for the crash and the accompanying traffic citations.  (Dkts. 68-4 ¶ 15; 74-1 ¶ 15.)[5]  The report said that, after the crash, Plaintiff's car smelled strongly of burnt marijuana and Plaintiff had bloodshot, watery eyes; constricted pupils; and eyelid tremors.  (Dkts. 68-4 ¶ 18; 74-1 ¶ 18.)  It also said Plaintiff had body tremors, slow and raspy speech, and "her tongue was discolored with raised taste buds."  (Dkts. 68-4 ¶ 19; 74-1 ¶ 19.)[6]  The state crime lab results for Plaintiff's blood analysis were not yet available.  (Dkts. 68-4 ¶ 16; 74-1 ¶ 16.)   Based on Trooper Flowers's report, Defendant sought a probation violation warrant for Plaintiff on May 20th, alleging

---

[5] Plaintiff responded to this fact (and a few others) with a statement that she "is without sufficient knowledge to admit or deny this statement." (Dkt. 74-1 ¶¶ 15–16, 27.)  That is not an acceptable response.  *See* LR 56.1(B)(2)(a)(4).

[6] Plaintiff denies she had tremors or distorted speech.  (Dkt. 74-1 ¶ 19.) She also denies that her tongue was discolored with raised taste buds and says Officer Flowers never got close enough to observe her tongue.  (*Id*.) But she does not deny that Officer Flowers included these observations in his report.  So that allegation is admitted.  And even if it was not, the report establishes its own content.  (Dkt. 68-1 at 6.)

Plaintiff had violated the criminal laws by driving under the influence and failing to maintain her lane.  (Dkts. 68-4 ¶ 22; 74-1 ¶ 22; 68-2.)

The next day, Plaintiff turned herself into the Polk County jail on the two traffic charges as Officer Flowers had instructed her to do.  (Dkts. 68-4 ¶ 23; 74-1 ¶ 23.)  When she tried to bond out of jail, Plaintiff learned of the probation violation warrant.  (Dkts. 68-4 ¶ 24; 74-1 ¶ 24.)  On May 22nd, Defendant petitioned for modification or revocation of Plaintiff's probation based on the charges filed by Trooper Flowers.  (Dkts. 68-4 ¶ 25; 74-1 ¶ 25.)  On June 3rd, Defendant signed her consent to a probation bond, which led to Plaintiff's release from jail.  (Dkts. 68-4 ¶ 16; 74-1 ¶ 16.)  The state crime lab results arrived on June 26th and showed Plaintiff was negative for drugs and alcohol the night of the crash.  (Dkts. 68-4 ¶ 28; 74-1 ¶ 28.)  As a result, Defendant dismissed the probation violation petition against Plaintiff.  (*Id.*)

## II.   Legal Standard

Federal Rule of Civil Procedure 56 states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the

outcome of the suit under the governing law." *W. Grp. Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1360 (11th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 1361 (citing *Anderson*, 477 U.S. at 248).

The party moving for summary judgment bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The nonmoving party then has the burden of showing that summary judgment is improper by coming forward with "specific facts" showing there is a genuine dispute for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)).  Ultimately, there is no "genuine issue for trial" when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

6

requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.  A district court must "resolve all reasonable doubts about the facts in favor of the non-movant[] and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (alteration adopted) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## III.   Discussion[7]

### A.    Federal § 1983 Claims

#### 1.    False Imprisonment

Plaintiff asserts a false imprisonment claim against Defendant. (Dkt. 1-3 at 16.)  Plaintiff alleges that "[a]lthough Defendant [Brandon] had a copy of a drug report from [WellStar] showing a negative result for alcohol taken on May 7, 2019," Defendant "placed a hold on" Plaintiff, which "requir[ed] her to make a probation bond to be release[d] from the Polk County jail," and this "caused [Plaintiff] to remain in the Polk County jail for eleven days before she was able to post bond."  (*Id.* at 16–

---

[7] Plaintiff's response in opposition (Dkt. 74) is conclusory, suffers from a lack of organization, often makes no sense, and fails to engage with Defendant's brief in support of its motion for summary judgment on most issues.

17.)  Defendant argues summary judgment is appropriate on this claim because any jail time for the probation violation occurred under legal process.  (Dkt. 69 at 6–7.)  The Court agrees.

"A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures *without* legal process, such as warrantless arrests."  *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (emphasis added).  The issuance of a warrant—even an invalid one— "constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, [her] claim is for malicious prosecution rather than false arrest."  *Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) (per curiam); *see also Coward v. Simone*, 2012 WL 4381270, at *5 (N.D. Ga. Sept. 24, 2012) ("[W]here an arrest is made pursuant to a warrant, a form of legal process, a cause of action for false arrest or false imprisonment based on the arrest will not lie.  On the contrary, the tort of malicious prosecution is the exclusive remedy for a confinement pursuant to legal process." (internal citation omitted)).

It is undisputed that Plaintiff's imprisonment for the probation violation occurred under legal process, specifically a probation violation warrant.  (Dkts. 1-3 ¶ 69 ("Plaintiff's Revocation Hearing was set

pursuant to a valid warrant pursued by Defendant Kim [Brandon] . . . ."); 74 at 12 (noting that Defendant "fil[ed] the Petition to revoke her Probation"), 15 ("[Defendant] filed for a PROBATION REVOCATION . . . .").) Defendant is thus entitled to summary judgment on Plaintiff's false imprisonment claim. *See Rahmaan v. McQuilkin*, 2021 WL 86842, at *4 (N.D. Ga. Jan. 11, 2021) ("Here, [the plaintiff] was arrested and detained under the authority of a warrant; therefore, his § 1983 cause of action can only be based on malicious prosecution, which is a 'shorthand way of describing certain claims of unlawful seizure under the Fourth Amendment.'" (quoting *Aguirre*, 965 F.3d at 1157)).

### 2. Malicious Prosecution

Plaintiff also brings a federal malicious prosecution claim against Defendant. (Dkt. 1-3 at 17–19.) To maintain such a claim, a plaintiff must overcome two hurdles. First, she must prove she suffered a seizure pursuant to legal process that violated the Fourth Amendment. *Aguirre*, 965 F.3d at 1157–79. This burden requires Plaintiff to "establish (1) that the legal process justifying [her] seizure was constitutionally infirm and (2) that [her] seizure would not otherwise be justified without legal process." *Id.* at 1165. Second, she must satisfy "the elements of the

common law tort of malicious prosecution." *Id.* at 1157. This burden requires Plaintiff to show "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018).

Defendant argues summary judgment is appropriate on this claim in part because a probation revocation proceeding is not a prosecution.[8]

---

[8] Defendant raises other grounds for why summary judgment is appropriate, such as qualified immunity, the existence of probable cause, and the inability of Plaintiff to establish malice. (Dkt. 69 at 5–15.) The Court need not reach these issues because summary judgment is appropriate because a probation revocation is not a criminal prosecution, as explained below. But if the Court were to reach the qualified immunity issue, it would find Defendant is entitled to qualified immunity because the undisputed facts establish she was acting within her discretionary authority as a probation officer, she was entitled to rely upon Officer Flowers's report because it is reasonably trustworthy evidence, and that report provided her with at least arguable probable cause to believe Plaintiff had violated the terms of her probation in driving under the influence. *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 946 (11th Cir. 2008) (per curiam) ("Defendants to a malicious prosecution claim under § 1983 are entitled to qualified immunity if the plaintiff is unable to show that they acted without probable cause."); *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010) ("To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause."); *Hardigree v. Lofton*, 992 F.3d 1216, 1225 (11th Cir. 2021) ("Arguable probable cause

(Dkt. 69 at 8–9.)  The Court agrees.  Probation revocation is not a stage of a criminal prosecution.  *See Smith v. Mitchell*, 856 F. App'x 248, 250 (11th Cir. 2021) (per curiam) ("[A] probation-revocation hearing is not a 'criminal prosecution' for the purposes of a malicious-prosecution claim."); *Bivins v. Kellogg*, 2020 WL 7647794, at *5 (M.D. Ga. July 7, 2020) (finding that the plaintiff's "malicious prosecution claim fails, as the probation revocation proceeding was not a stage of his criminal prosecution and cannot form the basis for a malicious prosecution claim"); *Walker v. Dean*, 2016 WL 3227501, at *3 (N.D. Ga. June 13, 2016) ("[A] petition for probation revocation is not a criminal prosecution for purposes of a Section 1983 claim for malicious prosecution . . . ."); *Castillo v. Florida*, 630 F. App'x 1001, 1006 (11th Cir. 2015) ("[P]robation revocation hearings are not criminal prosecutions . . . ."); *Zabresky v. Von Schmeling*, 2014 WL 414248, at *5 (M.D. Pa. Feb. 4, 2014) ("[N]o court has held that a probation violation is tantamount to a criminal prosecution."); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) ("Probation

---

exists if 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed.'"); *Arnold Rogers v. City of Orlando*, 660 F. App'x 819, 825 n.9 (11th Cir. 2016) (per curiam) ("[I]n assessing probable cause[,] an officer may rely on evidence that is 'reasonably trustworthy.'").

revocation, like parole revocation, is not a stage of a criminal prosecution . . . .").   Summary judgment is thus appropriate on the malicious prosecution claim against Defendant.

## B.   State Claims

Plaintiff asserts claims under state law for abuse of process,[9] a cause of action under the Georgia Constitution, intentional and negligent infliction of emotional distress, and defamation.  (Dkt. 1-3 at 19–21, 25–27.)   Defendant argues summary judgment is appropriate on each of these claims because she is entitled to official immunity and they fail on the merits.[10]  (Dkt. 69 at 15–21.)

"[U]nder the Georgia Constitution, state officials are entitled to official immunity for their discretionary actions unless they acted with

---

[9] Plaintiff does not specify whether her abuse of process claim is brought under § 1983 or state law.  Defendant analyzes it exclusively under state law (Dkt. 69 at 17), and Plaintiff does not say otherwise in her response (Dkt. 74 (never discussing an abuse of process claim)).  The Court thus construes it to be a state law claim.  But to the extent that she sought to bring such a claim under § 1983, she has abandoned it.  In any event, in the light of her abuse-of-process allegations stemming from her arrest, such allegations are more properly analyzed under the Fourth Amendment, not the Due Process Clause of the Fourteenth Amendment. *See Jordan v. Mosley*, 298 F. App'x 803, 805 (11th Cir. 2008) (per curiam).
[10] The Court need not reach the merits of the state law claims because summary judgment is appropriate because Defendant is entitled to official immunity, as explained below.

'actual malice' or an 'actual intent to cause injury.'" *Black v. Wigington*, 811 F.3d 1259, 1265–66 (11th Cir. 2016) (quoting Ga. Const. art. I, § 2, para. IX(d)).   "A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Todd v. Kelly*, 535 S.E.2d 540, 542 (Ga. Ct. App. 2000) (internal quotation marks omitted).  A ministerial act, which does not entitle a public official to official immunity, "is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. *Howell v. Willis*, 729 S.E.2d 643, 645 (Ga. Ct. App. 2012).  In deciding whether a public employee's action is discretionary or ministerial,

> the court must focus on the character of the specific actions taken by the government official or employee, not the general nature of the job; and the characterization is determined by the facts of each individual case, particularly the facts specifically relevant to the official's act or omission from which the alleged liability arises.

13 Georgia Jurisprudence § 9:6 (2022) (footnotes omitted).

Defendant argues her evaluation of Plaintiff's probation violation and decision to obtain a probation violation warrant are discretionary actions.  (Dkt. 69 at 16.)  Plaintiff says Defendant breached ministerial

duties  (Dkt. 74 at 8, 11) but fails to explain why those "duties" are ministerial in nature.  Defendant, a state probation officer, was acting within the scope of her authority when she decided to petition for modification or revocation of probation.  She exercised her discretion to do so after reviewing Trooper Flowers's report and considering the other evidence before her.  As part of this, she had to assess the reliability of the Trooper's observations about the smell emanating from Plaintiff's car and Plaintiff's physical condition following the accident.  She then had to weigh the Trooper's observations against her post-crash conversations with Plaintiff and Plaintiff's disclosure of the WellStar rapid screen negative test results.  Defendant also had to consider whether to wait for test results from the state crime lab.  Finally, she had to determine whether the totality of the evidence was sufficient to establish that Plaintiff had been driving while under the influence of marijuana or some other substance.  Defendant's judgment was certainly a discretionary act. *Anderson v. Cobb*, 573 S.E.2d 417, 419 (Ga. App. 2002) (detective's "decision to seek an arrest warrant is a discretionary act").

Defendant is thus entitled to official immunity unless she acted with actual malice or an actual intent to cause injury.  Actual malice, as

used in the context of official immunity, "requires a deliberate intention to do wrong." *Merrow v. Hawkins*, 467 S.E.2d 336, 337 (Ga. 1996). And "actual intent to cause injury" means an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly causing the claimed injury. 13 Georgia Jurisprudence § 9:21 (2022). Defendant argues "there is nothing that comes even close to approaching the high threshold for 'actual malice' required to defeat official immunity." (Dkt. 69 at 16–17.) Plaintiff mentions the phrase "actual malice" four times— each time while discussing the legal standard. (*See* Dkt. 74 at 13, 17–18.) The Court has no burden to distill every potential argument that could be made based on the materials before it on summary judgment. The onus is upon the parties to formulate their arguments. *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). But, liberally construing her response brief, Plaintiff may be saying Defendant acted with actual malice because she brought a probation modification/revocation petition despite seeing negative drug and alcohol results from WellStar. That is not enough to show actual malice. Defendant also had a report from a state trooper saying otherwise. Georgia courts have held that there is no evidence of actual malice for

purposes of official immunity even where an officer's decision to seek warrants might be characterized as "misguided." *Todd*, 535 S.E.2d at 543. The Court is not suggesting Defendant was "misguided" in her assessment of the situation but simply noting that, even if she were, that would not establish malice as a matter of law. Defendant is entitled to official immunity. Summary judgment is appropriate on Plaintiff's claims under state law for abuse of process, a cause of action under the Georgia Constitution, intentional and negligent infliction of emotional distress, and defamation against Defendant.

### C.   Punitive Damages

Plaintiff seeks punitive damages against Defendant. (Dkt. 1-3 at 27–28.) She does not identify whether she seeks them under § 1983 or Georgia law. (*Id.*) If she relies on § 1983, Defendant argues the claim fails because she cannot show Defendant's conduct was motivated by evil motive or intent, or that Defendant was recklessly or callously indifferent to the federally protected rights of others. (Dkt. 69 at 21–22.) If she relies on state law, Defendant contends her claim fails because (1) she has no viable underlying state law claim and (2) she cannot show Defendant engaged in willful misconduct, malice, wantonness, oppression, or

otherwise evinced an entire want of care as to authorize imposing punitive damages. (*Id.* at 22.) Plaintiff does not respond to any of these arguments or support her punitive damages claim in any way. (*See generally* Dkt. 74.) Indeed, the phrase "punitive damages" never appears in her response brief. (*Id.*) The Court finds Plaintiff has abandoned her punitive damages claim because of her failure to address Defendant's argument on this claim or otherwise support this claim in her response to the motion for summary judgment. *See McIntyre v. Eckerd Corp.*, 251 F. App'x 621, 622 (11th Cir. 2007) (per curiam) (affirming district court's finding that an employee abandoned her battery claim on summary judgment where she offered no response to the employer's motion on that claim); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned and affirming grant of summary judgment as to claim presented in complaint but not raised in response to motion for summary judgment); *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir. 2000) (finding claim abandoned where it was not briefed and argued in district court in party's response to motion for summary judgment or in party's own motion for summary judgment); *see also Resol. Tr. Corp.*, 43 F.3d at 599 ("In

17

opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.'"). Summary judgment is appropriate on the punitive damages claim against Defendant.

## IV. Conclusion

The Court **GRANTS** Defendant Kim Brandon's Motion for Summary Judgment (Dkt. 68). The Clerk is **DIRECTED** to **TERMINATE** Kim Brandon as a defendant.[11]

**SO ORDERED** this 6th day of May, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[11] This Order does not affect any claims brought against Defendants Floyd Medical Center or Tonya Johnson.